UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
ADRIANA BECERRIL,
                                                       :     **REPORT AND RECOMMENDATION**
                        Plaintiff,
                                                       :         08 Civ. 10283 (PAC) (KNF)
                - against -
                                                       :
EAST BRONX NAACP
CHILD DEVELOPMENT CENTER,
                                                       :
                        Defendant.                                                          :
-------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

In this action, Adriana Becerril ("Becerril") alleges violations of: (1) Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Pregnancy Discrimination

Act of 1978 ("Title VII"); (2) the New York State Human Rights Law ("NYHRL"), New York

Executive Law §§ 290 et seq.; and (3) the New York City Human Rights Law ("NYCHRL"),

New York City Administrative Code §§ 8-101 et seq., against East Bronx N.A.A.C.P. Child

Development Center ("East Bronx Center"). Upon the plaintiff's motion, based upon the

defendant's failure to answer or otherwise respond to the complaint, your Honor entered a default

judgment, on March 2, 2009, against the defendant and referred the matter to the undersigned to

conduct an inquest and to report and recommend the amount of damages, if any, to be awarded to

the plaintiff against the defendant.

The Court directed the plaintiff to file and serve proposed findings of fact and conclusions of law and an inquest memorandum setting forth her proof of damages, costs of this action, and her attorney's fees.  In support of her application for damages, the plaintiff submitted, inter alia: (1) a personal affidavit; (2) a copy of her 2007 W-2, Wage and Tax Statement; (3) a record of her unemployment insurance benefits from the New York State Department of Labor; (4) contemporaneous handwritten notes respecting potential employment opportunities; (5) a copy of her anti-depressant prescription; (6) an affidavit from her primary care physician; (7) a copy of her employment agreement with the Mosholu Montefiore Community Center; and (8) a declaration, by Kenneth P. Thompson, Esq. "(Thompson")," in support of the plaintiff's request for attorney's fees and costs.

The plaintiff's submissions aver that she is entitled to: (a) $83,558, in back pay, for lost past wages; (b) $10,000, in front pay, for lost future wages; (c) $250,000, in compensatory damages, for emotional pain and mental anguish; (d) $250,000, in punitive damages; and (e) $78,128, in costs and attorneys' fees, and pre- and post-judgment interest.

The defendant did not make any submission in connection with the inquest, although it was directed to do so, through an order of the Court, dated March 16, 2009.

**BACKGROUND**

When a defendant defaults in an action, the plaintiff's well pleaded factual allegations are accepted as true, except for those relating to damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (stating that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, [but] it is not considered an

admission of damages").  In such a circumstance, the plaintiff is "entitled to all reasonable

inferences from the evidence offered."  Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d

Cir. 1981).  Based upon the submissions made by the plaintiff, the complaint filed in the instant

action, and the Court's review of the entire court file, the following findings of fact are made:

The East Bronx Center is a day care center, with its principal place of business at 1113

Colgate Avenue, Bronx County, New York (the "Colgate Avenue location").  It has two

additional sites, in Bronx County, located on Metropolitan Avenue (the "Metropolitan Avenue

location") and McGraw Avenue (the "McGraw Avenue location").  In 2007, the defendant

employed approximately 70 employees.  Yolanda Braham ("Braham") was the defendant's

Managing Director and, along with the Board of Directors, had the authority to hire, as well as

terminate, employees.

 Becerril began her employment at the East Bronx Center in April 2005, as Director of the

McGraw Avenue location, and, in 2007, received an annual salary of $65,000 ($1,250 per week).

Braham was the plaintiff's direct supervisor.  In March 2007, Becerril announced her pregnancy

to Braham.  In the summer of 2007, Becerril was assigned new tasks, which required her to

travel, either by car or by foot, to the Colgate Avenue and Metropolitan Avenue locations.  In

July 2007, Becerril's physician diagnosed her with pre-term labor and "high risk" pregnancy, the

causes of which were deemed to be stress, and the extra responsibilities and travel at her job.

On September 12, 2007, Becerril informed Braham that she would no longer be able to

travel to the other day-care locations because of the associated health risks to her pregnancy.  On

September 14, 2007, Becerril submitted to Braham a note from her physician, requesting Braham

to restrict the plaintiff's responsibilities, such as lifting, and long periods of walking and stressful activities.  In response to Becerril's requests to restrict her tasks, Braham appeared annoyed.  The following business day, on September 17, 2007, Braham terminated Becerril's employment, without any explanation.  Throughout her employment, Becerril received positive feedback regarding her performance and had not been disciplined for any reason.

After her termination, Becerril contacted over 50 potential employers and sent her resume to several other employers.  Despite her efforts, the plaintiff remained unemployed until December 15, 2008, when she commenced employment with the Moshulu Montefiore Community Center ("Mosholu Center"), as Director of Day Care, for an annual salary of $55,000 ($1,057.70 per week).  Becerril received unemployment compensation from the New York State Department of Labor, from September 30, 2007, to December 12, 2008, totaling $17,010.

During her period of unemployment, Becerril sought medical treatment from her primary care physician in April, May, and September 2008; was prescribed three prescription medications; and was diagnosed with depression, migraine headaches, and post-concussive syndrome.  Becerril's symptoms did not improve until after September 2008.  After regaining employment, the plaintiff no longer required prescription medication, and remained asymptomatic.

On March 10, 2008, Becerril filed a timely charge of discrimination, against the East Bronx Center, with the Equal Employment Opportunity Commission ("EEOC").  On September 29, 2008, the EEOC issued her a right to sue notice, and the instant action was commenced timely, on November 25, 2008.

## CONCLUSIONS OF LAW

A litigant's default in an action establishes that party's liability, but is not a concession of damages.  See Cappetta v. Lippman, 913 F. Supp. 302, 304 (S.D.N.Y. 1996) (citing Flaks v. Koegel, 504 F.2d 702, 707 [2d Cir. 1974]).  Damages must be established by the plaintiff in a post-default inquest.  See id.  In conducting an inquest, the court need not hold a hearing "as long as it [has] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (internal quotations and citations omitted).  The court may rely on affidavits or documentary evidence in evaluating the fairness of the sum requested.  See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993).

*1. Award of Back Pay*

It is within a court's sound discretion, under Title VII, to award back pay to a prevailing plaintiff in a discrimination suit.  See 42 U.S.C. § 2000e-5(g)(1).  Although the award is discretionary, back pay "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."  Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S. Ct. 2362, 2373 (1975).  The same standards used to award front and back pay in Title VII discrimination cases also apply to cases arising under NYHRL and NYCHRL.  See Shannon v. Fireman's Fund Ins. Co., 136 F. Supp. 2d 225, 228 n.4 (S.D.N.Y. 2001) (citations omitted).

"The purpose of back pay is to completely redress the economic injury the plaintiff has suffered as a result of discrimination."  Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993) (internal quotations and citations omitted).  The back pay award, therefore, may include lost wages, and anticipated raises and/or fringe benefits.  See id.  A plaintiff is "entitled to an award of back pay from the date of her termination until the date of judgment."  Id. at 144. Accordingly, Becerril is entitled to $95,000 ($1,250 multiplied by 76 weeks) in back pay, for the period from September 17, 2007, the date of termination, to March 2, 2009, the date the default judgment was entered.

*a. Mitigation of Damages*

Under Title VII, a prevailing plaintiff forfeits her right to back or front pay if she fails to mitigate damages by not using "reasonable diligence in finding other suitable employment." Ford Motor Co. v. EEOC, 458 U.S. 219, 231, 102 S. Ct. 3057, 3065 (1982).  The plaintiff's duty is "not onerous, and does not require [her] to be successful in mitigation."  Dailey v. Societe Generale, 108 F.3d 451, 456 (2d Cir. 1997) (internal quotations and citations omitted). Furthermore, to satisfy the duty to mitigate, "the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position."  Ford Motor Co., 458 U.S. 219, 231, 102 S. Ct. 3057, 3065.  However, if the plaintiff accepts employment, even if not comparable, the new earnings are subtracted from the back pay award.  See 42 U.S.C. §  2000e-5(g)(1).

Becerril maintains that, despite her good faith efforts, she was unable to obtain new employment until December 15, 2008, the date on which she commenced her employment with

the Mosholu Center.  Becerril asserts she contacted over 50 potential employers and provides contemporaneous handwritten notes, documenting her attempts to find new employment.

As noted previously, the defendant has not submitted any evidence challenging the sufficiency of Becerril's efforts to mitigate her damages.  As a result, it is reasonable and appropriate to conclude that Becerril was reasonably diligent in her search for new employment. See Dailey, 108 F.3d at 456 (citing Hanna v. American Motors Corp., 724 F.2d 1300, 1309 [7th Cir. 1984] [finding that filing applications, reading classified advertisements, and discussing employment opportunities with a friend are "more than sufficient to constitute reasonable diligence"]).

In accordance with Title VII, Becerril's back pay award must be reduced by her interim earnings.  See 42 U.S.C. § 2000e-5(g)(1).  Therefore, the back pay award of $95,000 will be reduced by $11,634.70 ($1,057 multiplied by 11 weeks), the amount earned by Becerril between December 15, 2008 – the date Becerril commenced her employment at the Mosholu Center – and March 2, 2009, the date of entry of the default judgment.  Accordingly, the total back pay award is reduced to $83,365.30.

*b. Deduction of Unemployment Benefits*

"[T]he decision whether or not to deduct unemployment benefits from a Title VII back pay award rests in the sound discretion of the district court."  Dailey, 108 F.3d at 460.  Becerril received unemployment compensation in the amount of $17,010.  Since the East Bronx Center terminated Becerril's employment wrongfully, it should not receive the benefit of having the plaintiff's unemployment compensation deducted from her total back pay award.  See Shannon,

136 F. Supp. 2d at 232 (noting that, while "collateral source payments do represent an additional benefit to the plaintiff . . . 'as between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer'")(quoting Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 258 [2d Cir. 1991]) (internal quotations omitted).  As a result, it is reasonable and appropriate that Becerril's unemployment compensation not be deducted from her total award of back pay.

*c. Pre-judgment Interest*

Under Title VII, a district court has the discretion to grant pre-judgment interest on an award of back pay.  See Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998).  In addition, courts have the discretion to determine the appropriate rate of pre-judgment interest in a back pay award.  See McIntosh v. Irving Trust Co., 873 F. Supp. 872, 882 (S.D.N.Y. 1995).  Where a judgment is based on violations of both federal and state law, courts in this circuit have set the rate of pre-judgment interest at the 52-week treasury bill rate referred to in 28 U.S.C. § 1961(a).[1] See Robinson v. Instructional Systems, Inc., 80 F. Supp. 2d 203, 208 (S.D.N.Y. 2000) (calculating pre-judgment interest under section 1961(a) for claims arising under Title VII and NYHRL); Walia v. Vivek Purmasir & Assocs., Inc., 160 F. Supp. 2d 380, 388-89 (E.D.N.Y. 2000)(same).  Such a rate, for pre-judgment interest, is, therefore, appropriately applied in this case.

---

[1]28 U.S.C. § 1961(a) provides, in pertinent part:  "Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . .  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding."

Courts calculating pre-judgment interest, in accord with 28 U.S.C. § 1961(a), use the average annual rate of return on one-year treasury bills between the time the claim arises and the entry of judgment.  See, e.g., EEOC v. Yellow Freight System, Inc., No. 98 Civ. 2270, 2002 WL 31011859, at *33 (S.D.N.Y. Sept. 9, 2002); McIntosh, 873 F. Supp. at 883.  Applying this method, plaintiff's pre-judgment interest should be calculated at the average annual rate of return between the date of her termination, on September 17, 2007, and the entry of judgment, on March 2, 2009.  In addition, calculating the interest as though it had been compounded annually is appropriate, see Saulpaugh, 4 F.3d at 145 ("Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if interest is compounded"), and, further, distributing the back pay award evenly, over the appropriate time period, see McIntosh, 873 F. Supp. at 884 (finding that the objective of fully compensating plaintiff was best achieved by dividing jury's back pay award evenly over relevant time period for purposes of calculating pre-judgment interest), is reasonable.

*2. Award of Front Pay*

Front pay is an equitable remedy available to a prevailing Title VII plaintiff.  See Vernon v. Port Auth. of New York and New Jersey, 220 F. Supp. 2d 223, 236 (S.D.N.Y. 2002) (citations omitted).  Front pay is awarded in the sound discretion of the district court.  See Shannon, 136 F. Supp. 2d at 233.  "In deciding whether an award of front pay is appropriate, a court should consider (1) whether reinstatement [is] either impossible or impracticable[;] (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve undue speculation."  See id. (citations and quotation omitted).  To receive an award of front pay, the plaintiff must exercise "reasonable diligence" in

mitigating damages by seeking alternative employment.  Ford Motor Co., 458 U.S. at 231, 102 S.

Ct. at 3065.

In this case, reinstatement is not practicable, since the plaintiff has commenced new

employment and there is no indication the defendant is willing to rehire the plaintiff.  In addition,

although the plaintiff has made a good faith effort to mitigate damages, she has been unable to

find comparable alternative employment. As noted above, the plaintiff now earns $10,000 per

year less than she earned when she was employed by the East Bronx Center.  Therefore, the

Court finds that Becerril is entitled to an award of front pay to the extent she has not been made

whole, under her current employment conditions.  See Vernon, 220 F. Supp. 2d at 236

("Although a monetary determination is certain to be speculative in nature, the Second Circuit

repeatedly has upheld awards of front pay, when reinstatement is not an option.").

In the circumstance of the instant case, one year of front pay, in the amount of the

difference between Becerril's current salary and what she would have earned had she not been

discharged from her position with the East Bronx Center, is sufficient to make the plaintiff

whole.  Awarding Becerril front pay for one year is appropriate in light of her inability, despite

the exercise of reasonable diligence, to find comparable alternative employment in the period

between her termination and the date of default, and does not involve undue speculation.  See

Thomas v. iStar Fin., Inc., 508 F. Supp. 2d. 252, 260 (S.D.N.Y. 2007) ("If front pay is

appropriate, a year or two is the most this Court would deem reasonable."); Hill v. Airborne

Freight Corp., Nos. 97 Civ. 7098, 98 Civ. 6249, 2003 WL 366641, at *5 (E.D.N.Y. Feb. 20,

2003) (awarding plaintiff front pay in the amount of a one year differential between the plaintiff's

former and current salary because plaintiff had been unable to secure comparable employment

and earnings).  Accordingly, Becerril is entitled to an award of front pay in the amount of

$10,000.

*3. Compensatory and Punitive Damages*

A prevailing Title VII plaintiff is entitled to be compensated for "emotional pain,

suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary

losses." 42 U.S.C. § 1981a(b)(3).  In addition, a court may award a Title VII plaintiff punitive

damages if the plaintiff demonstrates that the defendant "engaged in a discriminatory practice or

discriminatory practices with malice or with reckless indifference to the federally protected rights

of an aggrieved individual." Id. § 1981a(b)(1).

The maximum recovery allowed, under Title VII, for a combined amount of

compensatory and punitive damages, from a defendant with more than 14 but fewer than 101

employees, is $50,000.  See 42 U.S.C. § 1981a(b)(3)(A).  Under NYHRL and NYCHRL,

however, an award for compensatory damages is not subject to any limitation.  Although punitive

damages are not available under NYHRL, NYCHRL does provide for punitive damages in

discrimination cases.  See Farias v. Instructional Sys., Inc., 259 F.3d 91, 101 (2d Cir. 2001).

In employment discrimination cases, there is a broad spectrum of damages awarded for

emotional distress claims.  See Rainone v. Potter, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005)

(citations omitted).  For "typical" or "garden variety" emotional distress claims, district courts

have awarded damages ranging from $5,000 to $35,000, based upon the plaintiff's "vague or

conclusory" testimony of distress.  Id.  "Significant" or "substantial" emotional distress claims,

-11-

which garner awards of $50,000 to $100,000, consist of more substantial harm, usually

evidenced through medical testimony or documentation.  Id.  "Egregious" emotional distress

claims, which result in awards in excess of $100,000, "have only been warranted where the

discriminatory conduct was outrageous and shocking or where the physical health of the plaintiff

was significantly affected."  Id. at 123 (internal quotations and citations omitted).

    In the case at bar, the plaintiff provided the Court with a personal affidavit, and

documentation from her primary care physician and pharmacy, supporting her contention that she

suffered physical and emotional distress, as a result of her termination from the East Bronx

Center.  This evidence places her claim into the "significant" or "substantial" category of

emotional distress claims.  Id. at 122.  However, Becerril's physical and emotional symptoms

dissipated soon after she regained employment, and during her period of unemployment, her

symptoms of physical and emotional distress lasted a few months, during which her symptoms

improved with medication.  As such, the Court finds it reasonable and appropriate to award

compensatory damages on the low-end of the range for "substantial" distress claims, in the

amount of $50,000.  See Epstein v. Kalvin-Miller Int'l Inc., 139 F. Supp. 2d 469, 481 (S.D.N.Y.

2001) (approving a jury award of $54,000 for emotional distress claim where plaintiff sought

medical treatment).

    Although the maximum award allowed under Title VII for compensatory and punitive

damages is $50,000, the plaintiff may recover additional punitive damages under NYCHRL,[2] if

---

    [2]NYCHRL's Title 8 provides, in pertinent part: "Any person claiming to be aggrieved by
an unlawful discriminatory practice . . . or by an act of discriminatory harassment or violence . . .
(continued...)

the defendant "engaged in a discriminatory practice with malice or with reckless indifference" to the rights secured to the plaintiff by law.  42 U.S.C.§ 1981a(b)(1); <u>see also</u> N.Y.C. Admin. Code § 8-502(a).  To recover punitive damages under NYCHRL, the plaintiff must show either: (1) the employer acted with "malice and reckless indifference[,] refer[ing] to the employer's knowledge that it may be acting in violation of federal law;" or (2) "egregious or outrageous acts" by the employer, that support "an inference of the requisite evil motive."  <u>Farias</u>, 259 F.3d at 101-02 (quotations and citations omitted).

        At most, Becerril has alleged her supervisor was annoyed by the plaintiff's pregnancy status.  This allegation is insufficient to establish the East Bronx Center fired her with the conscious knowledge it was violating the law, nor does it indicate "egregious or outrageous" conduct from which an inference of "malice or reckless indifference" can be drawn.  <u>See</u> <u>Robinson</u>, 80 F. Supp. 2d at 209-10 (denying punitive damages because, while "retaliatory denial of post-termination benefits may certainly constitute culpable behavior, it could not reasonably be construed as 'outrageous' or 'egregious'"); <u>compare</u> <u>Walia</u>, 160 F. Supp. 2d at 392 (awarding punitive damages where employer physically assaulted plaintiff and deliberately attempted to destroy the plaintiff's reputation).  Accordingly, the Court finds that no additional punitive damages should be awarded to the plaintiff under NYCHRL.

*4. Attorney's Fees and Costs*

        In actions or proceedings, pursuant to Title VII, a prevailing plaintiff may recover

---

[2](...continued)

shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages . . ." N.Y.C. Admin Code §8-502(a).

reasonable attorney's fees and costs.  See 42 U.S.C. § 2000e-5(k).  A prevailing party is one who

obtains direct benefits from an enforceable judgment that provides "relief on the merits of [the

party's] claim."  Farrar v. Hobby, 506 U.S. 103, 111, 113 S. Ct. 566, 573 (1992).  The award of

attorney's fees, under Title VII, also includes the time spent on administrative proceedings to

enforce the civil rights claim prior to litigation.  See New York Gaslight Club, Inc. v. Carey, 447

U.S. 54, 66, 100 S. Ct. 2024, 2032 (1980); Nestor v. Pratt & Whitney, 466 F.3d 65, 67 n.1 (2d

Cir. 2006).

*a. Reasonable Hourly Rates for Attorneys*

When fixing an appropriate amount to be awarded for attorneys' fees, the Second Circuit

Court of Appeals requires that the "presumptively reasonable fee" method be employed.  Arbor

Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir.

2008).  While "exercising its considerable discretion," a court should assess "all of the case-

specific variables that [the Second Circuit] and other courts have identified as relevant to the

reasonableness of attorney's fees," in order to determine what constitutes a presumptively

reasonable fee.  Id. (discussing "case-specific variables").  In assessing the reasonableness of

attorneys' fees under this standard, a court must analyze the party's evidence to determine

whether the "requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v.

Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984).

The plaintiff seeks $78,128 in attorneys' fees.  She is represented by the firm Thompson,

Widgor & Gilly, LLP ("TWG").  In support of her request for attorneys' fees, the plaintiff

submitted a declaration by Thompson, which describes the experience and specialized expertise

of Thompson, a TWG founding partner; Christopher Q. Davis ("Davis"), Cindy E. Uh ("Uh")

and Renan F. Varghese ("Varghese"), TWG associates; and Patrick J. Scanlan ("Scanlan"), a

TWG paralegal.

The experience of each attorney who rendered legal services to the plaintiff, and the

customary billing rates, are factors that the Court may consider in determining the reasonableness

of the attorneys' fees the plaintiff incurred.  See Arbor Hill, 522 F.3d at 187 n.3.  Thompson's

declaration states he has fifteen years of experience and charges $750 per hour for his legal

services; Davis, who has eight years of experience, charges $475 per hour for his legal services;

and Uh and Varghese, who have two and four years of experience, respectively, charged $385 per

hour for their legal services in 2008, and $400 per hour in 2009.  Scanlan charges an hourly rate

of $165, for his paralegal services.  Thompson asserts these hourly rates are regularly

commanded by him and the firm's attorneys in their practice, and reflect the rates that courts

within this district have awarded to attorneys with similar experience practicing employment law.

In analyzing an application for attorneys' fees and costs, a court may also consider the

awards given in similar cases within the district.  Id. at 187 n.3.  Upon a comprehensive review

of other decisions within this district, the Court finds the rates requested by Thompson for

himself, his associates, and paralegal are higher than the rates awarded "for similar services by

lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 896 n.11;

see Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y 2008) (finding reasonable fee rates

to be: $600 per hour awarded to a partner with over 30 years experience, $250-$350 per hour

awarded to associates with experience ranging from four to seven years, and $125 per hour awarded to a paralegal); <u>Chan v. Sung Yue Tung Corp.</u>, No. 03 Civ. 6048, 2007 WL 1373118, at *3-5 (S.D.N.Y. May 8, 2007) (finding reasonable fees to constitute $450 per hour awarded to a large-firm partner, with sixteen years of experience, $400 per hour awarded to a non-profit entity's attorney, with fifteen years of experience, $300 per hour awarded to associates, and $50-$150 per hour awarded for paralegal services). These cases, therefore, militate in favor of some reduction to the rates requested by the plaintiff for the legal services rendered by Thompson and his colleagues.

In addition, a court may consider the complexity of the case in assessing the reasonableness of the award. <u>See</u> <u>Rozell</u>, 576 F. Supp. 2d at 546. This case did not present any unusual or complicated factual or legal issues; this was a single plaintiff discrimination case that was unopposed. The relatively straightforward nature of this case, therefore, also warrants some reduction in the rates. Id. (quotations omitted).

Based on the Court's review of case law, as well as the "case-specific variables," it is reasonable and appropriate to reduce the plaintiff's attorneys' hourly fee rates to: (i) $450 for the work performed by Thompson; (ii) $350 for the work performed by Davis; (iii) $250 for the work performed by Varghese and Uh; and (iv) $100 for Scanlan's paralegal services.

 *b. Reasonableness of Number of Hours Expended*

In the Second Circuit, a party seeking an award of attorney's fees must support that request with contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." <u>New York State Ass'n for Retarded Children, Inc.</u>

v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983). Fee applications that do not contain such supporting data "should normally be disallowed." Id. A court may reduce the number of hours billed by counsel if the time records submitted to the court do not describe, with sufficient clarity, the nature of the work performed such that the court can assess the reasonableness of that work in the context of the overall litigation, and, concomitantly, determine whether the amount billed for the work is reasonable. See Williamsburg Fair Hous. Comm. v. New York City Hous. Auth., No. 76 Civ. 2125, 2005 WL 736146, at *9 (S.D.N.Y. Mar 31, 2005). Furthermore, if a court finds the hours to be "excessive, redundant, or otherwise unnecessary," Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939 (1983), the court may reduce the award by eliminating compensation for the hours expended unreasonably, or by deducting a reasonable percentage of the total hours for which reimbursement is sought. See New York State Ass'n for Retarded Children, 711 F.2d at 1146.

Thompson submitted contemporaneous time records to support the plaintiff's application for attorneys' fees. The records indicated 184 hours were expended by TWG personnel on this case, from March 2008, to April 2009. The plaintiff's counsel spent approximately 64 hours reviewing the case file, attending to the administrative proceedings, preparing the pleadings, communicating with the client, serving process on the defendant, and preparing the motions for judgment by default. The remaining 120 hours were spent researching, drafting and revising the documents for, as well as communicating with, the client and her primary physician regarding the inquest.

Upon a detailed review of the time records, the Court finds that the total hours expended

should be reduced.  The law firm's time records contain a number of vague or irrelevant entries,

such as "office conference re: demand letter," "drafted demand letter," "reviewed and revised

demand letter," "office conference with K. Thompson re: email from anonymous witness."

These entries do not clearly demonstrate their relevance to the present case.  Furthermore, tasks,

such as "Preparation of binder for K. Thompson" and "Preparation and shipment of

correspondence and HIPAA form to healthcare provider," are clerical tasks, and typically

disallowed or compensated at less than the full hourly rate counsel charges.  See Rozell, 576 F.

Supp. 2d at 540.  In addition, fees corresponding to entries related to travel time, such as "Travel

to Dr. Samuelson's office to have affidavit signed and to pick up documents," should be reduced

by half.  Id.  As a result, the Court finds that a reduction of 8.2 hours should be made in the

number of hours for which the plaintiff's attorneys seek to be compensated: (i) 1 hour for

Thompson; (ii) 3.3 hours for Davis; and (iii) 3.9 hours for Scanlan.  Accordingly, the plaintiff is

entitled to attorneys' fees in the amount of $52,830, as depicted in the following table:

| Name | Position | Rate | Total Reduced Hours | Total |
|---|---|---|---|---|
| Kenneth P. Thompson | Partner | $ 450 / hr | 15.4 | $ 6,930 |
| Christopher Q. Davis | Associate | $ 350 / hr | 114.1 | $ 39,935 |
| Renan F. Varghese | Associate | $ 250 / hr | 7 | $ 1,750 |
| Cindy E. Uh | Associate | $ 250 / hr | 2.1 | $ 525 |
| Patrick J. Scanlan | Paralegal | $ 100 / hr | 36.9 | $ 3,690 |
| | | | Total Attorney's Fees | $ 52,830 |

*c. Costs*

Fed. R. Civ P. 54(d) provides that, unless otherwise provided by a statute, the Federal

Rules of Civil Procedure or a directive issued by a court, "costs-other than attorney's fees-should

be allowed to the prevailing party."   "[The] list of [] recoverable costs is obviously the list set out

in 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court."

Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 298-99, 126 S. Ct. 2455, 2460

(2006); see Rangolan v. County of Nassau, 370 F.3d 239, 250 (2d Cir. 2004).   The list of taxable

costs includes: (1) fees of the clerk and marshal; (2) fees of a court reporter for all or any part of

the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for

printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for

use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed

experts, compensation for interpreters, and salaries, fees, expenses, and costs of special

interpretation services under 28 U.S.C. § 1828.   See 28 U.S.C. § 1920.   A district court does not

have discretion, under Fed. R. Civ. P. 54(d), to tax as costs expenses incurred beyond those

specified as taxable by Congress in 28 U.S.C. § 1920.   See Whitfield v. Scully, 241 F.3d 264,

269 (2d Cir. 2001); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42, 107 S. Ct.

2494, 2497 (1987).   If costs are authorized, "the determination of amounts is vested in the sound

discretion of the district court."   United States of America, for the use and benefit of Evergreen

Pipeline Constr. Co., Inc.  v. Merritt Meridian Constr. Corp., 95 F.3d 153, 171 (2d Cir. 1996).

The plaintiff seeks $354.02, in costs she incurred in connection with copying documents,

serving process, transportation, and overnight delivery associated with the complaint, motions for

judgment by default and the inquest.   She also seeks $278.19, in LexisNexis research costs,

incurred in connection with the legal analysis supporting the motions for judgment by default and

-19-

the inquest.  Photocopies of documents obtained for use in the case are costs to which the

plaintiff is entitled.  However, the March 2009 $101.00 copying cost has to be deducted from the

reimbursed photocopying costs, because it does not correspond with any activity or task

documented in the time records submitted by the plaintiff's counsel.  The Court, therefore, was

unable to determine if the cost is reasonable.  The plaintiff is not entitled to any of the other costs

requested, since they include costs not specified as taxable, by Congress, in 28 U.S.C. § 1920.

With regard to "computer research[, it] is merely a substitute for an attorney's time that is

compensable under an application for attorney's fees and is not a separately taxable cost."  Id. at

173.  The Court finds that the LexisNexis research, although not compensable as a cost, is a

reasonable expense the plaintiff incurred and that the plaintiff is entitled to it, as part of the

reasonable attorneys' fees and expenses award.

*5. Post-Judgment Interest*

       "Postjudgment interest is designed to compensate the plaintiff for the delay it suffers from

the time damages are reduced to an enforceable judgment to the time the defendant pays the

judgment."  Andrulonis v. United States, 26 F.3d 1224, 1230 (2d Cir. 1994) (citations omitted).

Plaintiffs who prevail on a federal claim are entitled to post-judgment interest on all money

awards.  See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 55 (2d Cir. 1998).  Accordingly,

Becerril is entitled to post-judgment interest on the full judgment amount, as calculated by the

Clerk of Court, from March 2, 2009, at the rate prescribed by 28 U.S.C. § 1961(a).

## RECOMMENDATION

       For the reasons set forth above, I recommend the plaintiff be awarded: (1) back pay in the

amount of $83,365.30; (2) pre-judgment interest on the back pay award, for the period September 17, 2007, to March 2, 2009, to be calculated by the Clerk of Court, at the rate referred to in 28 U.S.C. § 1961(a); (3) front pay, in the amount of $10,000; (4) compensatory damages, in the amount of $50,000; (5) attorneys' fees, in the amount of $52,830; (6) costs, in the amount of $56.40; (7) expenses for legal research, in the amount of $278.19; and (8) post-judgment interest, to be calculated by the Clerk of Court, at the rate referred to in 28 U.S.C. § 1961(a), from March 2, 2009.

The plaintiff shall serve a copy of this Report and Recommendation upon the defendants and submit proof of service to the Clerk of Court.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Reynoso, 968 F.2d 298,

300 (2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v.</u>

<u>Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York              Respectfully submitted,
      August 18, 2009

                                                *Kevin Nathaniel Fox*
                                               KEVIN NATHANIEL FOX
                                               UNITED STATES MAGISTRATE JUDGE